**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **A.L. and N.L.**, *individually, and as guardians ad litem* of M.L., <br><br> Plaintiffs, <br><br> v. <br><br> **HOWELL TOWNSHIP BOARD OF EDUCATION**, <br><br> Defendant. | Civil Action No. 24-234 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon cross-motions for summary judgment. (ECF Nos. 15 and 16.) Plaintiffs A.L. and N.L., individually and as *guardians ad litem* of M.L., (collectively, "Plaintiffs") instituted this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and New Jersey Administrative Code § 6A:14-2.7(v), to appeal from a final decision of the Administrative Law Judge ("ALJ") that concluded Defendant Howell Township Board of Education ("Defendant" or "Howell BOE") satisfied its obligations of providing M.L. with a free and appropriate public education ("FAPE"). Plaintiffs filed a Motion for Summary Judgment (ECF No. 15) seeking reversal of the ALJ's decision ("ALJ Decision," ECF No. 17-1). Defendant filed a Cross-Motion for Summary Judgment. (ECF No. 16.) Both parties filed briefs in support of their Motions. ("Plaintiffs' Br.," ECF No. 15-1, and "Defendant's Br.," ECF No. 16-1.) The parties are relying exclusively on the administrative record below. (ECF No. 11 at 5; ECF No. 15 at 1; ECF No. 16-1 at 1.)

1

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **DENY** Plaintiffs' Motion for Summary Judgment and **GRANT** Defendant's Cross-Motion for Summary Judgment. The ALJ's decision will be **AFFIRMED** and Judgment will be entered in favor of Defendant and against Plaintiffs.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Background

The following facts are uncontested and derived from Plaintiffs' Statement of Material Facts, the ALJ's decision, the due process hearing, and the administrative record. At the time the current Motions were filed, M.L. was "a twelve-year-old, sixth grade student who presents with an extensive neurodevelopmental and social-emotional history including attention-deficit hyperactivity disorder (ADHD), anxiety, and learning disabilities that affect reading, writing, comprehension, and expression." ("Plaintiffs' SOF," ECF No. 15-2 ¶ 1.) At all relevant times, Howell BOE provided special education and related services to M.L. in accordance with M.L.'s individualized education programs ("IEP"). (*Id.* ¶ 2.) However, despite Defendant's assistance, M.L. continued to struggle in school. (*Id.* ¶¶ 3–4.) M.L.'s child study team performed educational evaluations on M.L. in 2019 and 2021, and the results varied from satisfactory progression, to no movement, to regression. (*Id.* ¶¶ 5, 6, 7.) According to Marissa Brunner ("Brunner"), a qualified expert in speech pathology who testified at a hearing before the ALJ, M.L. was very intelligent but performing below her peers and was not progressing as quickly as them. (*Id.* ¶¶ 10–14.)

During her 2018–2019 first-grade school year, Plaintiffs requested that a child study team determine M.L.'s eligibility in special education. (*Id.* ¶ 16; ALJ Decision at 3.) On March 18,

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

2

2019, M.L. received her first IEP which revealed that she was reading at a kindergarten level and that stated she was eligible for special education. (Administrative Record ("AR")[2] at 41; Plaintiffs' SOF ¶ 15; ALJ Decision at 4.) Two months later, M.L.'s child study team issued an updated IEP for M.L. that included a plan to meet her functional goals. (ALJ Decision at 4.) Pursuant to that IEP, for the first-grade school year, Howell BOE proposed placement in the Learning or Language Disabilities ("LLD") classroom for language arts ten times per week for forty minutes, and pull-out resource placement for math nine times per week for forty minutes. (Plaintiffs' SOF ¶ 30.) No reading fluency or comprehension goals were included in the IEP. (*Id.* ¶ 31.)

During the 2019–2020 second-grade school year, M.L. was progressing satisfactorily or gradually on her goals. (ALJ Decision at 5.) The child study team issued another updated IEP on March 9, 2020. (*Id.*) Under that IEP, Howell BOE proposed placement in the LLD classroom for the same duration, and added supplementary support for science and social studies, which meant that M.L. received a paraprofessional. (Plaintiffs' SOF ¶ 33.) During that school year, the COVID-19 pandemic forced all schools to shut down which was undoubtedly difficult for M.L. (*Id.* ¶ 42.) Just prior to the shutdown, Howell BOE proposed the same special education program for M.L. for the same duration, with the addition of group counselling services two times per month for twenty-five minutes. (*Id.* ¶ 44.) Also prior to remote learning, Defendant sent Plaintiffs a letter indicating that M.L. was making progress on her educational goals and plans. (ALJ Decision at 6.) However, once remote learning started, M.L. was not engaged or completing assignments in the remote setting. (*Id.*)

In her 2020–2021 third-grade school year, M.L. attended a new elementary school in Howell, New Jersey. (Plaintiffs' SOF ¶ 49.) For the beginning of that school year, Plaintiffs

---

[2] The Administrative Record is filed on the docket at ECF No. 13. The Court cites to the Administrative Record by its internal pagination rather than the numbering imposed by the Court's CM/ECF system.

3

decided to switch to virtual instruction given that M.L.'s grandfather, who was at high risk of contracting COVID-19 was staying with the family. (*Id.* ¶ 51.) When she returned to in-person instruction, M.L was placed in small groups of three to five students with similar skills during lessons, yet she progressed only slightly. (*Id.* ¶ 54.) In February 2021, the child study team re-evaluated M.L. and found that she was still eligible for special education services but not eligible for special education in the areas of reading fluency or reading comprehension. (*Id.* ¶¶ 60, 62.) The child study team proposed that M.L. receive in-class resource support for science and social studies along with other programs and services. (ALJ Decision at 8.) That February 2021 IEP also recommended an extended school year ("ESY") for M.L, which she did not take advantage of. (*Id.*) During that same school year, in April 2021, M.L.'s IEP was updated so she could receive speech and language therapy for twenty-five minutes each week. (*Id.* at 9.)

During the fourth-grade school year, the child study team met with M.L. due to increasingly problematic behavior at home and in school. (*Id.*) The child study team gave M.L. strategies and suggestions and also recommended individual private counseling, which M.L. did not attend because she was occasionally seeing an out-of-school therapist. (*Id.* at 9–10.) Pursuant to a December 1, 2021 IEP, M.L.'s programs were amended to include private counseling once a week for twenty minutes, and she was placed with approximately twelve other students and worked in smaller group sizes for language arts. (Plaintiffs' SOF ¶¶ 69, 70.) During this fourth-grade school year, M.L. continued to struggle with reading which affected her socially and emotionally. (*Id.* ¶ 78.) Although M.L. progressed slightly, she remained at a first-grade reading level while in fourth grade. (*Id.* ¶¶ 17–18.) In March 2022, Defendant sent Plaintiffs another request to amend M.L.'s IEP to add a behavioral plan due to ongoing behavioral issues in the classroom. (AR at

4

306.) Plaintiffs consented to that request as they did with all other requests, IEPs, and re-evaluations. (*Id.* at 327.)

In October 2022, after continuing to struggle, Plaintiffs enrolled M.L. in "The Academy NJ" ("The Academy"), an accredited special education school located in Holmdel, New Jersey. (Plaintiffs' SOF ¶¶ 153–154, 161–162.) According to Plaintiffs and Brunner, M.L. has made significant progress since starting at The Academy. (*Id.* ¶ 165.)

### B. Procedural History

Plaintiffs filed a Petition for Due Process (the "Petition") on or about August 31, 2022, contending that Defendant's special education program was inappropriate for M.L. (*Id.* ¶ 185; ALJ Decision at 2.) The matter was transmitted by the New Jersey Department of Education to the Office of Administrative Law ("OAL") on or about October 13, 2022. (ALJ Decision at 2; Plaintiffs' SOF ¶ 186.) Settlement conferences were held on October 20, 2022 and January 23, 2023, but were not successful. (*Id.* ¶ 187; ALJ Decision at 2.) The Petition was assigned to an ALJ and a four-day due process hearing began on April 19, 2023. ("Transcripts," ECF No. 13-10 to 13-14.) The following witnesses testified at the hearing: Ann Gradman, the Director and teacher at The Academy; N.L., M.L.'s mother; Marisa Brunner, a speech pathologist; Tamara Coffee, a social worker for Howell BOE; Jenna Rockwell, a learning consultant; Shannon McCreight, a resource center teacher; and Dorothea Fernandez, Director of Pupil Services at Howell BOE.[3] (*Id.*) The ALJ issued her final decision on December 4, 2023.

The ALJ first summarized the undisputed facts and testimony of the several district employees and other witnesses who appeared at the due process hearing, and found them credible. (ALJ Decision at 30.) With respect to Brunner's testimony, the ALJ noted that she was "qualified

---

[3] For a brief review of the witnesses' testimony, the Court directs the parties to the ALJ's Decision.

5

as an expert in speech pathology and evaluating students with language-based learning disabilities." (*Id.*) However, because Brunner was not an educational consultant and did not have a teaching certificate, the ALJ determined that she could not "opine on whether the District provided FAPE." (*Id.*)

The ALJ began her analysis of the merits of this matter by noting that from M.L.'s first-grade to fourth-grade year, she received seven different IEPs, with each advancing her progress. (*Id.* at 35.) The ALJ found that M.L.'s child study team was very active and when an IEP needed to be updated, it was. (*Id.*) The ALJ also noted that the child study team recommended either individual counseling or other plans each time M.L.'s behavior worsened. (*Id.* at 36.) The ALJ rejected Plaintiffs' arguments that the IEPs were not satisfactory given that Plaintiffs never rejected the IEPs, which they were permitted to do. (*Id.*) The ALJ relied on *K.D. v. Downingtown Area School District*, 904 F.3d 248 (3d Cir. 2018), for the proposition that a student's slow progress on its own does not indicate that an IEP was deficient. (*Id.*) Lastly, the ALJ found it significant that M.L. refused to attend ESY for three straight summers or attend sessions with the individual counselor offered by the district. (*Id.* at 36–37.) Overall, the ALJ concluded that Defendant provided M.L. with a FAPE and that Defendant was not responsible for covering the expense of M.L.'s out-of-district placement. (*Id.* at 37.)

On January 15, 2024, after the ALJ's final decision, Plaintiffs filed a Complaint in this Court. ("Compl.," ECF No. 1.) According to the Complaint, the ALJ erroneously concluded that Defendant satisfied its obligation to M.L. by providing her with a FAPE, and that an out-of-district placement was not appropriate. (Compl. ¶ 75.) Plaintiffs allege that Defendant failed to meet its burden of proving M.L. was offered a FAPE. (*Id.* ¶¶ 82–99.) Defendant filed an Answer to the

Complaint on April 1, 2024. (ECF No. 7.) After discovery, Plaintiffs filed the instant Motion (ECF No. 15), and Defendant filed the instant Cross-Motion. (ECF No. 16.)

## II.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415 because this case implicates the IDEA.

## III.    STANDARD OF REVIEW

The standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 Fed. App'x. 404 (3d Cir. 2003); *Cf. R.S. by & through M.S. v. E. Brunswick Sch. Dist.*, Civ. No. 23-21258, 2024 WL 4755671, at *5 (D.N.J. Nov. 12, 2024) ("[M]otions for summary judgment in an IDEA case are the procedural vehicle for asking the judge to decide the case based on the administrative record.").

"When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006); *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (noting that the district court "must make its own findings by a preponderance of the evidence" but "also afford 'due weight' to the ALJ's determination"); *see also Bd. of Educ. of Hendrick Hudson Ctrl. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982) ("[D]ue weight shall be given to [state administrative] proceedings"); *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995) (stating that "due weight" means to "consider—although not necessarily to accept—the administrative fact findings").

Where, as here, a district court reviews administrative fact finding without hearing additional evidence, it is "required to defer to the ALJ's factual findings unless it can point to contrary nontestimonial extrinsic evidence in the record." *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). The purpose of such a deferential standard is to ensure that federal courts do not impose their own "view of preferable educational methods on the states." *Rowley*, 458 U.S. at 207. Nonetheless, a district court's review of legal questions is plenary. *See Carlisle*, 62 F.3d at 528 n.3; *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 500 (D.N.J. 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998). The district court may reject the findings of an ALJ, *Carlisle*, 62 F.3d at 529, as long as it "fully explain[s] its reasons" for doing so. *S.H.*, 336 F.3d at 271.

## IV.  LEGAL STANDARD

The IDEA was enacted to ensure that children with disabilities receive an appropriate public education. *Rowley*, 458 U.S. at 179 (discussing the history of the IDEA).[4] "The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate these children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) (citing *P.P. ex rel. Michael P. v. W. Chester Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009)). Under this rubric, local education agencies ("LEA") are required to (1) identify children in need of special education services, and (2) provide them with a free appropriate public education. *See D.K.*, 696 F.3d at 244; *M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 391 (3d Cir. 1996) (citing 20 U.S.C. § 1400(c)). In other words, in exchange for

---

[4] In passing the IDEA, Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1).

federal funds, a state pledges that it will provide a FAPE to eligible children. *Endrew F. v. Douglas Cnty Sch. Dist. Re-1*, 580 U.S. 386 (2017).

A FAPE "consists of educational instruction specially designed to meet the unique needs of the . . . child, supported by such services as are necessary to permit the child to 'benefit from the instruction.'" *S.H.*, 336 F.3d at 264 (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995)); *see also Rowley*, 458 U.S. at 188–89, 203–04 (instructing that, at a minimum, "if the child is being educated in the regular classrooms of the public education system," a FAPE "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade"); *see also I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*, Civ. No. 16-9152, 2018 WL 2441761, at *1 (D.N.J. May 31, 2018).

States provide a FAPE by means of an IEP.[5] *See* 20 U.S.C. § 1414(d); *Shore Reg'l*, 381 F.3d at 198. An IEP must, among other things, identify a child's current performance, include short-term and long-term goals, and set out services to be provided. *Id.*; *see also* 20 U.S.C. § 1414(d). Under New Jersey law, the IEP is developed by a child study team[6] along with "parents, a teacher familiar with the student[], and other personnel." *Shore Reg'l*, 381 F.3d at 198–99, 264–65; *see also Rowley*, 458 U.S. at 182 (noting that the IEP is "prepared at a meeting between a qualified representative of the [LEA], the child's teacher, the child's parents or guardian, and where appropriate, the child"); *see also Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (stating that "[t]he core of the IDEA is the collaborative process that it establishes between parents and schools"). "[T]he education provided must 'be sufficient to confer some educational benefit'"

---

[5] An IEP is defined as "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of this title." 20 U.S.C. § 1401(14).

[6] The child study team is composed of "a psychologist, a learning disability teacher-consultant, and a school social worker." *Shore Reg'l*, 381 F.3d at 198–99 (citing N.J. Ann. Stat. § 18A:46-5.1). The child study team first evaluates the student to determine if he or she should be classified as disabled, and if the student is deemed disabled, that evaluation is used to help develop the IEP. *Id.* (citing N.J. Ann. Stat. §§ 6A:14-3.1, -3.7).

upon the student. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577–78 (3d Cir. 2000) (quoting *Rowley*, 458 U.S. at 188–89).

Procedurally, "[t]he IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010). In that regard, a "parent who believes that a school has failed to provide a FAPE may request . . . a due process hearing[] to seek relief from the school district for its failure to provide a FAPE," and may appeal an adverse decision to the federal district court. *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009); *see also C.H.*, 606 F.3d at 66 ("The parent or guardian of a minor student who is denied the rights and procedures set forth in the IDEA is afforded the opportunity to file an administrative complaint and to appeal an adverse determination to a federal district court."). In New Jersey, this process entails filing a complaint and request for a due process hearing before an ALJ with the New Jersey Department of Education. *See* N.J. Admin. Code § 6A: 14-2.7(c) and (g).

"When parents challenge [the adequacy of] a school's provision of a FAPE to a child, a reviewing court must (1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'"[7] *Mary T.*, 575 F.3d at 249 (quoting *Rowley*, 458 U.S. at 207). In doing so, "a court should determine the appropriateness of an IEP as of the time it was made, and should use evidence acquired subsequently to the creation of an IEP only to evaluate the reasonableness of the school district's decisions at the time that they were made." *D.S. v. Bayonne Bd. Of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010).

---

[7] In the instant matter, because the IDEA's procedural requirements are not at issue, the Court's inquiry on these Motions is limited to the second prong of *Rowley*—whether the educational program was reasonably calculated to enable the child to receive educational benefits.

## V.     DISCUSSION

Plaintiffs argue that the ALJ's conclusion that Defendant met its burden of providing M.L. with a FAPE is contrary to the weight of the evidence. (Plaintiffs' Moving Br. at 10.) Plaintiffs contend that the IEPs for M.L. did not set forth measurable annual goals and M.L.'s child study team did not meet to discuss additions or modifications to the special education or related services. (*Id.* at 11.) Because M.L.'s IEP and all relevant data presented to the ALJ show regression and not improvement over the many years in school, Plaintiffs claim that it "can hardly be said" that M.L. was "offered an education at all." (*Id.* at 13.) According to Plaintiffs, the ALJ erred by appearing to "blame this lack of progress on M.L." (*Id.* at 15.) Essentially, Plaintiffs' argument is that M.L.'s lack of progress in the Howell School District shows that she did not receive a FAPE, and that the ALJ failed to consider M.L.'s lack of progress and the evidence in the record showing M.L.'s struggles. (*Id.* at 16–24.) Plaintiffs moreover argue that the ALJ erred by relying on *K.D. v. Downingtown Area School District*, 904 F.3d 248 (3d Cir. 2018). (*Id.* at 27.)

Defendant responds that the administrative record "clearly indicates that [Howell BOE] provided M.L. with a FAPE." (Defendant's Moving Br. at 1.) According to Defendant, the ALJ correctly determined that [Howell BOE] provided M.L. with a FAPE in the least restrictive environment, and as such, Plaintiffs were not entitled to reimbursement of their removal of M.L." (*Id.* at 5.) Defendant maintains that the IEPs proposed by Howell BOE were sufficient to confer an educational benefit upon M.L. (*Id.* at 11.) It contends that the testimony at the due process hearing confirmed that the LLD classroom setting was appropriate for M.L. (*Id.* at 12.) Defendant also claims that Brunner's testimony emphasized and conceded that Defendant provided the necessary recommended instruction for M.L. (*Id.* at 12.) Lastly, Defendant argues that the ALJ

11

correctly determined that the inquiry is whether the IEP was reasonable, not whether it was ideal, which it was in this case. (*Id.* at 13.)

### A. Whether Defendant Provided M.L. With a FAPE

The Court is sensitive to the challenges M.L. has faced based on her learning disabilities. Nevertheless, the Court concludes that under the IDEA, Defendant provided M.L. with a FAPE. Accordingly, for reasons to be articulated below, the Court finds that the ALJ did not err and that her decision should be affirmed.

First, the law is clear: the IDEA does not require a school district to provide the best possible education for a child with a disability, merely an appropriate education. *Rowley*, 458 U.S. at 189; *Polk v. Central Susquehanna Intermediate Unit*, 853 F.2d 171, 178 (3d Cir. 1988). An appropriate IEP must provide "'meaningful' access to education and confer 'some educational benefit' upon the child for whom it is designed." *Ridgewood Bd. of Educ. v. P.S.*, 172 F.3d 238, 247 (3d Cir. 1999) (quoting *Rowley*, 458 U.S. at 192, 200). However, the Third Circuit has held that the educational benefit must be more than "trivial," and must offer the potential for "significant learning" and "meaningful benefit." *Id.*; *see also Shore Reg'l*, 381 F.3d at 199 (appropriate IEPs must be "'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the child's 'intellectual potential.'") (quoting *Polk*, 853 F.2d at 181).

Here, M.L. was provided with numerous IEPs that were, notably, consented to by Plaintiffs. Despite her difficulty making significant progress when compared to other students at the school, contrary to Plaintiffs' position, M.L. did make adequate, "gradual," and satisfactory progress as indicated by the numerous reports and exhibits in the administrative record. (T2 70:5–14,[8] ECF No. 13-11.) For example, many of the progress reports submitted to Plaintiffs by M.L.'s case

---

[8] "T2" refers to the transcript of the due process hearing from April 20, 2023, where Jenna Rockwell and Shannon McCrea testified.

12

manager indicate that M.L. was progressing satisfactorily in many respects. The testimony at the due process hearing also established that there was "some gradual progress." (*See* T1 47:18,[9] ECF No. 13-10.) Plaintiffs' concessions confirm that M.L. progressed each year to the next grade (*see, e.g.*, Plaintiffs' SOF ¶¶ 16, 17, 30, 33, 49), and that whenever M.L. struggled, the IEPs were adjusted accordingly. (*See* T1 49:17–20); *see also Rowley*, 458 U.S. at 188–89, 203–04 (noting that a FAPE "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade").

On this point, the administrative record illustrates that when M.L.'s first IEP did not work well for her, Defendant modified it—with the consent of Plaintiffs—so that she received supplementary support via a paraprofessional. Defendant, moreover, continuously sought consent to re-evaluate M.L. and indeed re-evaluated her on multiple occasions to assess her needs and to establish an educational plan suitable for her. (*See, e.g.*, AR at 131, 153, 192.) As stated, when there were regressions, the administrative record indicates that those IEPs were adjusted. Plaintiffs acknowledge this in their statement of material facts. (*See, e.g.*, Plaintiffs' SOF ¶¶ 24, 28, 33, 45, 53, 60, 62, 69, 90.) As an example, when the December 2021 IEP failed to work as planned, Defendant placed M.L. in smaller groups and a more individualized setting. And in March 2022, M.L.'s IEP was amended again with a new behavioral plan. In short, the administrative record shows that Defendant regularly updated the IEPs to provide more support for M.L. As Plaintiffs recognize in their moving brief, "the essential function of an IEP is to set out a plan for pursuing academic and functional advancement," *Endrew*, 580 U.S. at 399, which is exactly what the IEPs did in for M.L.

---

[9] "T1" refers to the transcript of the due process hearing from April 19, 2023, where Tamara Coffee and Jenna Rockwell testified.

Understandably, Plaintiffs seek more, arguing that the adjustments Defendant made to M.L.'s IEPs were so minor as to have been rendered insignificant to her progress. (Plaintiffs' Moving Br. at 28.) But this argument must fail, both because the IEPs by Defendant meet the standard required under Third Circuit authority and because Plaintiffs could have rejected the IEPs when they were presented but did not. In sum, the Court is satisfied that Defendant met its obligations under the IDEA of providing M.L. with a FAPE.

### B. Whether the ALJ Erred

Additionally, for the reasons set forth below, the Court finds that the ALJ did not err in the decision below.

#### 1. Finding that M.L. Received a FAPE

First, the Court sees no reason to disturb the ALJ's decision with respect to M.L.'s FAPE insofar as it is based on substantial and credible evidence in the administrative record. Importantly, whether an IEP is appropriate is a question of fact. *D.S.*, 602 F.3d at 564. Similarly, whether Defendant met its FAPE obligation is also a question of fact. *P.P.*, 585 F.3d at 735. As such, the Court gives due weight and deference to the ALJ's findings of fact and credibility determinations. Based on the evidence provided by Defendant, the Court concludes that Defendant has shown by a preponderance of the evidence that it appropriately implemented M.L.'s IEP and that it provided M.L. with a FAPE.

The ALJ also correctly cited *K.D. v. Downingtown Area School District*, 904 F.3d 248 (3d Cir. 2018). As the Third Circuit noted in *Downingtown*, a school complies with the IDEA when it tailors IEPs to the student. *See id.* at 254. The ALJ correctly noted that M.L.'s child study team proposed seven different IEPS tailored to her academic and behavioral needs. (ALJ Decision at 35.) The school therefore met its obligations in this case. *Downingtown* also instructs the Court

14

to look at whether the educational program resulted in progress. Here, M.L. had significant learning disabilities that impacted her ability to significantly progress under the IEPs. However, the administrative record shows that M.L. did progress slightly and that the IEPs were reasonable. Again, as correctly observed by the ALJ, "the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *See id.* at 255 (emphasis in original).

Moreover, contrary to Plaintiffs' contentions, the ALJ did not blame M.L. for her lack of progress. Instead, the ALJ's decision merely observed that M.L. did not take advantage of some of the programs that Defendant offered, including ESY and individual counseling.[10] (ALJ Decision at 37.) The administrative record provides that M.L. was given an appropriate remote learning plan post-COVID-19 when Plaintiffs decided to pursue remote learning, yet she struggled in that remote environment. (ECF No. 13-2, at 60.) Notably, it was also Plaintiffs' decision to remove M.L from the in-person school environment.[11] The administrative record additionally illustrates M.L.'s goals pertaining to her social skills programs and counseling, and details the educational plans provided by Defendant. (AR at 51–79.) It simply cannot be said on this record that the ALJ erred in concluding that Defendant provided M.L. with a FAPE.

    2.    Limiting Brunner's Testimony

As a separate matter, the Court finds for the reasons below that the ALJ also did not err in concluding that Brunner could not "opine on whether the District provided [M.L. with a] FAPE," (s*ee* Plaintiffs' Moving Br. at 31), and, in the alternative, even if the ALJ had considered Brunner's testimony it would not have altered the determination made below.

---

[10] The administrative record additionally indicates that M.L. had poor attendance in school which would no doubt disrupt the learning process and developmental skills of a student. (AR at 14.)
[11] The Court of course takes no position as to Plaintiffs' parenting decisions. It merely notes that remote learning or home schooling is generally understood to be less conducive to learning.

In administrative law hearings, expert testimony is admissible if the ALJ finds that it is (1) "[b]ased on facts and data perceived by or made known to the witness at or before the hearing," and (2) [w]ithin the scope of the special knowledge, skill, experience or training possessed by the witness." N.J. Admin. Code § 1:1-15.9(b); *see also* Fed. R. Evid. 702 (governing admissibility of expert testimony).

In her decision, the ALJ stated:

> I generally accept Brunner's testimony as credible, as she was also professional and consistent in her testimony. Brunner, however, was qualified as an expert in speech pathology and evaluating students with language-based learning disabilities; she acknowledged that she is not an educational consultant and does not have a teaching certificate. For those reasons, she cannot opine on whether the District provided [a] FAPE, as she is not qualified to make such a determination, and her testimony whether the District provided FAPE will not be considered.

(ALJ Decision at 30.) Plaintiffs argue that the ALJ incorrectly limited the testimony of Brunner, by barring her from "opin[ing] on whether the district provided [a] FAPE." (Plaintiffs' Moving Br. at 31.) The Court disagrees.

Notably, the record reflects that the parties explicitly consented to this limitation on the scope of Brunner's testimony at the hearing. During her testimony, Brunner clarified that she has a degree in speech pathology. (T3 8:4-5.)[12] Brunner walked through her certifications and career and reiterated that she was qualified as an expert in two prior OAL cases. (T3 102:24.) Counsel for Plaintiffs sought to offer Brunner as an expert in speech pathology and, importantly, the development of programs for students with language-based learning disabilities. (T3 32:23-25.) Defense counsel objected because Brunner had not shown that she worked on the development of programs for students. (T3 33:14-24.) Without ruling on the objection, the ALJ allowed the direct

---

[12] "T3" refers to the transcript of Brunner's testimony. This was recently provided to the Court on February 13, 2025. (*See* ECF No. 18.)

16

examination to continue but said she would address the concern later after cross-examination. (T3 35:20-25.) On cross-examination, defense counsel clarified that in the two prior OAL cases, Brunner was offered as an expert in speech pathology and the "evaluations of students with learning based disabilities . . . not necessarily . . . developing programs." (T3 103:2-8.) In response to this dispute between "evaluating" and "developing," the parties stipulated on the record to Brunner being an expert in evaluations on students with language-based learning disabilities but not an expert in developing programs. (T3 106:6-8.) This limitation of Brunner's testimony, proposed by Plaintiffs' counsel to overcome defense counsel's objection, was then adopted by the ALJ in her decision. The effect is that Plaintiffs have waived this issue for purposes of this appeal. *See G.S. v. Cranbury Twp. Bd. of Educ.*, Civ. No. 10-774, 2011 WL 1584321, at *10 (D.N.J. Apr. 26, 2011), *aff'd*, 450 F. App'x 197 (3d Cir. 2011) ("Pursuant to the IDEA, the failure to raise an issue at the administrative level will result in a waiver of the issue on appeal to a district court" (collecting cases)).

Setting aside the waiver, the Court finds that even if the ALJ had considered Brunner's opinion testimony regarding whether Defendant provided M.L. with a FAPE, it would not have changed the ALJ's ultimate conclusion. Brunner's report provided recommendations for M.L.'s instruction that may very well aid in her learning. However, Brunner's testimony does not show that Defendant failed to comply with its legal obligations under the IDEA. Brunner concedes in her report that M.L. received "some auxiliary support," and had "significant intervention." (AR 26, 27.) As noted above, "the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Downingtown*, 904 F.3d at 255. Additionally, Brunner's review and observation of The Academy's programming and interventions (*see* AR 46–55) is not persuasive because the appropriateness of an IEP is not determined by a comparison between a private

placement and the program proposed by a district. *See S.H.*, 336 F.3d at 271. Lastly, Brunner admitted on cross-examination that she (1) did not know what occurred in M.L.'s classrooms, (2) was not an educational consultant, (3) never prepared an IEP despite providing recommendations for some, and (4) did not hold a teaching license or educational degree. For all these reasons, the Court finds that even if the ALJ had considered Brunner's testimony, that testimony would have been assigned little weight and would not have altered the ALJ's ultimate determination.[13]

## VI.   CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiffs' Motion for Summary Judgment and **GRANT** Defendant's Cross-Motion for Summary Judgment. The ALJ's decision will be **AFFIRMED** and Judgment will be entered in favor of Defendant and against Plaintiffs. An appropriate Order will follow.

Date: February 18, 2025

                                                    s/ Zahid N. Quraishi
                                                    **ZAHID N. QURAISHI**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[13] Plaintiffs cite two other cases where Brunner testified as an expert and discussed her views on whether the students in those respective cases were provided with a FAPE. (Plaintiffs' Moving Br. at 30–31.) As noted, in those cases Brunner was offered as an expert in evaluating students, not preparing IEPs. Moreover, Plaintiff cites to no authority, nor could they, for the proposition that previous decisions by ALJs where the full scope of Brunner's testimony was accepted would somehow be binding on the ALJ in this particular matter.